# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 12, 2013

No. 12-20654

Lyle W. Cayce
Clerk

MEMORIAL HERMANN HOSPITAL,

Plaintiff - Appellant

v.

KATHLEEN SEBELIUS, SECRETARY, DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, DAVIS, and PRADO, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal presents a soporific question of Medicare reimbursement arising when Hermann Hospital ("Hermann") merged with Memorial Hospital System ("Memorial"), creating the Memorial Hermann Hospital System ("MHHS"). Following the merger, the Administrator for the Centers of Medicare and Medicaid Services ("Administrator") denied MHHS's request for a loss payment, pursuant to 42 C.F.R. § 413.134(*l*), holding the merger was not a bona fide sale as required by statute; the district court agreed with these conclusions and dismissed MHHS's case on summary judgment. MHHS now appeals, contending the bona fide sale requirement does not apply to mergers, and,

alternatively, that this merger was a bona fide sale. Every other circuit to consider whether mergers must constitute bona fide sales to qualify under 42 C.F.R. § 413.134(*l*) has concluded that they must. In this appeal, MHHS has presented no compelling reason to create a circuit split, and thus we join all other circuits that have ruled on the question by holding statutory mergers must be bona fide sales in order to be eligible for a depreciation adjustment under 42 C.F.R. § 413.134(*l*). We further find that substantial evidence supports the Administrator's conclusion that this merger failed to constitute a bona fide sale. We therefore AFFIRM the judgment of the district court.

## I.

Hermann began its operations as a charitable hospital in 1925; it was operated by Hermann Hospital Estates, a testamentary trust established by George H. Hermann. Memorial is a Texas non-profit corporation that began providing healthcare services in Houston in 1907. The two completed their statutory merger on November 4, 1997, after receiving approval from the Harris County Probate Court and the Attorney General of Texas. The Harris County Probate Court noted, in particular, that the "Merger Agreement and transactions contemplated thereby are consistent with and in furtherance of . . . the fiduciary duties of the Trustees." Thereafter, the merged entity requested from the Secretary of Health and Human Services ("Secretary") a depreciation adjustment, under 42 C.F.R. § 413.134(*l*), in the amount of $21,731,800.00, on behalf of Hermann.

Depreciation adjustments are authorized by the Social Security Act, which entitles Medicare providers to reimbursement for the "reasonable cost" of furnishing Medicare services, including "an appropriate allowance for depreciation on buildings and equipment used in the provision of patient care." 42 C.F.R. § 413.134(a). The allowance is generally determined by taking the asset's "historical cost," defined as "the cost incurred by the present owner in

No. 12-20654

acquiring the asset," 42 C.F.R. § 413.134(b)(1), and prorating it over the asset's estimated useful life. 42 C.F.R. § 413.134(a)(3).

The Secretary has further determined that certain disposals of depreciable assets, including sales, may give rise to recognition of a "gain" or "loss." How the regulations treat gains or losses "depends upon the manner of disposition of the asset, as specified in paragraphs (f)(2) through (6) of [42 C.F.R. § 413.134(f)]." 42 C.F.R. § 413.134(f)(1). For example, for bona fide sales, gains or losses are calculated by comparing the consideration the provider obtains for the asset to the asset's "net book value," i.e., its historical cost minus any previous Medicare depreciation payments. 42 C.F.R. § 413.134(f)(2). If the consideration is less than the asset's net book value, the provider may claim a "loss," as MHHS has tried to do here.

Statutory mergers are sometimes eligible for such loss payments, as described in 42 C.F.R. § 413.134(l)(2)(i):

> *Statutory merger between unrelated parties.*[1] If the statutory merger is between two or more corporations that are unrelated (as specified in § 413.17), the assets of the merged corporation(s) acquired by the surviving corporation may be revalued in accordance with paragraph (g) of this section. If the merged corporation was a provider before the merger, then it is subject to the provisions of paragraphs (d)(3) and (f) of this section concerning recovery of accelerated depreciation and the realization of gains and losses.

The Secretary issued a guidance document in October 2000 further illuminating how to determine whether a statutory merger is eligible for depreciable gain / loss status. Clarification of the Application of the Regulations at 42 C.F.R. § 413.134(l) to Mergers and Consolidations Involving Non-profit Providers, Program Memorandum A–00–76 (Oct. 19, 2000) (PM A–00–76)

---

[1] It is undisputed in this appeal that Hermann and Memorial were unrelated parties prior to their merger. In her opinion, the Secretary found the two were related parties because we must consider their relationship *post*—not pre—merger. The district court, however, found this analysis was incorrect. Neither party appeals this finding.

No. 12-20654

(republished as PM A–00–96 (2001)), *available at* http://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downl oads/A0196.pdf. This document explains that subsection (*l*)'s cross reference to subsection (f) requires that, for "mergers and consolidations involving non-profit providers[,] . . . as with transactions involving for-profit entities, in order for Medicare to recognize a gain or loss on the disposal of the assets, the merger or consolidation must occur between or among parties that are not related as described in the regulations at 42 C.F.R. 413.17 and the transaction must involve one of the events described in 42 C.F.R. 413.134(f) as triggering a gain or loss recognition by Medicare (**typically, a *bona fide* sale**, as defined in the [Provider Reimbursement Manual (PRM)] at § 104.24." PM A–00–76, at 1-2 (emphasis added); *see also id.* at 3 ("Notwithstanding the treatment of the transaction for financial accounting purposes, no gain or loss may be recognized for Medicare payment purposes unless the transfer of the assets resulted from a *bona fide* sale as required by regulation 413.134(f) and as defined in the PRM at § 104.24."). The document elaborates:

> As with for-profit entities, in evaluating whether a *bona fide* sale has occurred in the context of a merger or consolidation between or among non-profit entities, a comparison of the sales price with the fair market value of the assets acquired is a required aspect of such analysis. As set forth in PRM § 104.24, a reasonable consideration is a required element of a *bona fide* sale. Thus, a large disparity between the sales price (consideration) and the fair market value of the assets sold indicates the lack of a *bona fide* sale. With regard to non-profit mergers or consolidations, often the sales price consists of assumed debt only, but may also include cash and/or new debt. Non-monetary consideration, such as a seller's concession from a buyer that the buyer must continue to provide care for a period of time or to provide care to the indigent, may not be taken into account in evaluating the reasonableness of the overall consideration (even where such elements may be quantified in dollar terms). These factors are more akin to goodwill than to consideration.

No. 12-20654

PM A–00–76 at 3.[2] This document further notes that it establishes no new rules. *Id.* at 4 ("This PM does not include any new policies regarding mergers or consolidations involving non-profit entities.").

Hoping to benefit from the statutory depreciation gain / loss scheme, MHHS filed a request for a loss payment post-merger. The Intermediary for the Secretary of Health and Human Services ("Intermediary") concluded the merged hospital was not entitled to a loss payment because the merging parties were related after the merger. MHHS requested review by the Provider Reimbursement Review Board ("PRRB"), which rejected the Intermediary's reliance on the "related party" requirement. The PRRB still denied MHHS's request, however, as it found the merger was not a bona fide sale. The Administrator of the Centers for Medicare & Medicaid Services ("CMS") upheld the PRRB's decision on the bona fide sale issue, but reversed its decision on the related party issue. The Administrator concluded that using the net book value of Hermann's assets to ascertain whether Memorial paid fair market value was appropriate because no appraisal was conducted; it then specifically found:

> The record shows that the consideration received by the Provider was assumed liabilities of approximately $373 million. The record shows that on October 31, 1997, the total assets acquired from the Provider were approximately $755.5 million. This included total current assets of $141 million, total non-current assets whose "use is limited-investments" of $331 million, and "PPE" (property, plant and equipment) [i.e., depreciable assets] of $252 million. The merged entity in turn assumed the approximately $373 million of liabilities. Thus, regardless of the determined fair market value of depreciable assets, the record shows that the liabilities assumed were approximately equal to the value of the current and noncurrent (non-depreciable) assets. Hence, in essence, the

---

[2] PRM § 104.24 provides: "A bona fide sale contemplates an arm's length transaction between a willing and well informed buyer and seller, neither being under coercion, for reasonable consideration. An arm's-length transaction is a transaction negotiated by unrelated parties, each acting in its own self interest."

No. 12-20654

depreciable assets were transferred for no consideration. Therefore, the Administrator finds that the transaction did not result in a *bona fide* sale for reasonable consideration.

A.R. at 20. The Administrator's decision constitutes the final decision of the Secretary.

After exhausting agency review of its claim, MHHS filed this lawsuit in district court under the Administrative Procedure Act ("APA"). The parties filed cross-motions for summary judgment, and the district court granted the defendant's motion. The district court first concluded the correct time for ascertaining whether two parties are "related" for purposes of the loss depreciation calculation is pre-merger. As it was undisputed that Hermann and Memorial were unrelated before the merger,[3] the district court next analyzed whether the bona fide sale requirement applied. Relying upon the plain language of the statute as well as the conclusions of all the other circuit courts to have reached this issue, the district court held the merger must constitute a bona fide sale to be eligible for a loss payment. *Memorial Hermann Hosp. v. Sebelius*, 882 F. Supp. 2d 882, 886 (S.D. Tex. 2012) (citing *Forsyth Memorial Hosp. v. Sebelius*, 639 F.3d 534 (D.C. Cir. 2011); *St. Luke's Hosp. v. Sebelius*, 611 F.3d 900 (D.C. Cir. 2010); *Albert Einstein Med. Ctr. v. Sebelius*, 566 F.3d 368 (3d Cir. 2009); *Robert F. Kennedy Med. Ctr. v. Leavitt*, 526 F.3d 557 (9th Cir. 2008); *Via Christi Regional Med. Ctr. v. Leavitt*, 509 F.3d 1259 (10th Cir. 2007)). Finally, the district court found substantial evidence supported the Administrator's conclusion that the Hermann-Memorial merger was not a bona fide sale, primarily because Hermann was motivated to ensure the continued operation of the hospital as a health care facility for the poor, indigent, and infirm residents of Houston (as intended by the Testator), rather than receiving fair market value for its assets.

---

[3] This issue is not contested in this appeal.

No. 12-20654

## II.

We review a grant of summary judgment *de novo*, applying the same standard as the district court. *Bd. of Miss. Levee Com'rs v. United States EPA*, 674 F.3d 409, 417 (5th Cir. 2012). "Under the APA, a federal court may only overturn an agency's ruling 'if it is arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole.'" *Id.* (quoting *Buffalo Marine Servs. v. United States*, 663 F.3d 750, 753 (5th Cir. 2011). We begin with "a presumption that the agency's decision is valid, and the plaintiff has the burden to overcome that presumption by showing that the decision was erroneous." *Id.* (quoting *Buffalo Marine Servs.*, 663 F.3d at 753). We review the agency's legal determinations *de novo. Id.* But with respect to questions of statutory interpretation, we owe "substantial deference to an agency's construction of a statute that it administers," *id.*, and must give an agency's interpretation " 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (quoting *Udall v. Tallman*, 380 U.S. 1, 16-17 (1965)).

We review an agency's factual findings only for substantial evidence, i.e., "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). Ultimately, "[w]e must be highly deferential to the administrative agency whose final decision is being reviewed." *Bd. of Miss. Levee Com'rs*, 674 F.3d at 417 (internal quotation marks and citations omitted).

## III.

MHHS makes two arguments in this appeal, which it contends warrant reversal of the district court: (1) the bona fide sale requirement does not apply to statutory mergers; and (2) even if this requirement were applicable, the

No. 12-20654

Memorial-Hermann merger constituted a bona fide sale. After thoroughly reviewing the case law and the record, we find neither argument compelling.

A.

MHHS argues the bona fide sale requirement does not apply here because (1) this requirement was implemented without notice or opportunity for public comment, thereby violating the APA; and (2) the definition of bona fide sale reflected in PM A–00–76 is entirely inconsistent with the agency's prior definition and was improperly applied retroactively to MHHS.

First, MHHS contends the bona fide sale requirement does not apply because it was not implemented pursuant to the APA's rulemaking procedure. As other circuits have already found, however, this requirement was not added in PM A–00–76, but is established by the plain language of 42 C.F.R. § 413.134(*l*). For example, the Ninth Circuit analyzed the same argument that MHHS is now making and concluded:

> The Secretary's interpretation that the realization of gains or losses on a statutory merger requires a "bona fide sale" is a reasonable construction of the Medicare regulations. The regulation governing statutory mergers, 42 C.F.R. § 413.134[(*l*)](2), incorporates 42 C.F.R. § 413.134(f), which lists the categories of asset disposal that trigger readjustment for gains or losses. *See* 42 C.F.R. § 413.134[(*l*)](2)(i) (stating that merged providers are "subject to the provisions of paragraph[] . . . (f) of this section concerning . . . the realization of gains and losses."). A "bona fide sale" is the only category listed in § 413.134(f) that arguably applies to a disposal of assets through statutory merger. *See id.* § 413.134(f)(2)-(6); *Via Christi Reg'l Med. Ctr.*, 509 F.3d at 1275. Thus, the Secretary reasonably interpreted these regulations as allowing gains or losses on the disposal of depreciable assets only when the merger qualifies as a "bona fide sale."

526 F.3d at 562 (alterations in original). Several other circuits have reached this same conclusion. *See Albert Einstein*, 566 F.3d at 376-77; *Forsyth Memorial*, 639 F.3d at 537-38 (noting the two requirement for reimbursement of depreciation

losses are: (1) the statutory merger is a bona fide sale, and (2) the parties to the transactions are not related); *Via Christi*, 509 F.3d at 1274 ("The 'bona fide sale' requirement is a reasonable construction of 42 C.F.R. § 413.134(*l*)(3)(i), supported by the text of the regulations.").

MHHS counters that several PRRB decisions have found the "bona fide sale" requirement does not apply to statutory mergers. For example, in *St. Francis Regional Med. Ctr. v. BlueCross BlueShield Assoc.*, No. 2009-D29, 2009 WL 3231755, at *15 (P.R.R.B. July 8, 2009), the Board reached a conclusion directly in contrast with the courts of appeals, finding:

> The Board has consistently rejected the position that requires the transaction to be a "bona fide sale," finding instead that when the regulation was amended to add 42 C.F.R. § 413.134[(*l*)], it expanded the disposition methods listed in section (f) to include consolidations and mergers; it did not require fitting consolidations and mergers into one of the disposition methods already listed.

*Id.* at *15; *see also Whidden Memorial Hosp. v. BlueCross BlueShield Assoc.*, No. 2009-D34, 2009 WL 3231747, at *11 (P.R.R.B. July 28, 2009) ("Historically, it is clear that CMS has not applied a 'bona fide' sale requirement to statutory mergers between unrelated organizations. . . . [O]nce a transaction is acknowledged to be a statutory merger between unrelated parties, the conclusion follows immediately that the provider is entitled to recognition of a loss or gain on disposition of its assets. In no instance is there a requirement that the merger meets the bona fide criteria applicable to sales."); *New England Deaconess Hosp. v. BlueCross BlueShield Assoc.*, No. 2009-D24, 2009 WL 1973496, at *7 (P.R.R.B. May 29, 2009) (finding PM A–00–76 is "substantive," that "the changes were not published with the notice and comment period required by the [APA]," and, therefore, that the bona fide sale requirement "is a retroactive change that cannot be applied").

No. 12-20654

The circuit courts that have confronted this issue, however, have refused to accept this line of reasoning, and we find they have the more convincing position. First, as all circuits have recognized, § 413.134(*l*)(2)(i) states that a merged provider "is *subject to* the provisions of paragraph[] . . . (f)"—indicating that mergers fit within paragraph (f)'s listed means of asset disposal, not that they form a separate avenue of asset disposal for purposes of the statute. (Emphasis added.) This conclusion is further supported by PM A–00–76's statement that it "does not include any new policies regarding mergers[.]" PM A–00–76 explained that statutory mergers must be bona fide sales in order to be eligible for loss depreciation payments; its assertion that it established no new rules therefore indicates the Secretary always maintained, based upon the plain language of § 413.134(f) and (*l*)(2)(i), that the bona fide sale requirement applied to mergers. This assertion is reasonable, especially given the fact that every other circuit to address this assertion has found it so.

Indeed, the D.C. Circuit even noted that, "[a]ccording to the preamble to the proposed rule, subsection (*l*)(2) 'points out that *a statutory merger is treated as a sale of assets.*'" *St. Luke's*, 611 F.3d at 902 (quoting Fed. Health Ins. for the Aged and Disabled, Establishment of Cost Basis on Purchase of Facility as an Ongoing Operation, and Transactions Involving Provider's Capital Stock, 42 Fed. Reg. 17485, 17485 (proposed Jan. 17, 1977)) (emphasis added). And several circuits have recognized that applying the bona fide sale requirement aligns this statutory right to repayment with the general Medicare principle that providers should be compensated only for *actual* payments (in order to keep costs lower). *See, e.g.*, *Albert Einstein*, 566 F.3d at 378; *Robert F. Kennedy Med. Ctr.*, 526 F.3d at 562; *Via Christi*, 509 F.3d at 1275-76. Thus, we conclude that the Secretary's decision to apply the bona fide sale requirement to statutory mergers is not arbitrary, capricious, an abuse of discretion, or in discordance with the law. *Bd. of Miss. Levee Com'rs*, 674 F.3d at 417.

No. 12-20654

Next, MHHS argues the Secretary's definition of "bona fide sale"—which requires "reasonable consideration" and a "comparison of the sales price with the fair market value of the assets"—is completely at odds with its previous definition—allegedly requiring only "valuable consideration"—and therefore not entitled to deference. Again, however, several circuits have already considered and rejected this argument. For example, in *St. Luke's*, the D.C. Circuit addressed this precise argument and reasoned that, "[w]hile none of St. Luke's's authorities affirmatively establishes a reasonable consideration requirement, neither do they authorize reimbursement where the consideration falls far short of fair market value." 611 F.3d at 906; *see also id.* at 906-07 (citing numerous cases recognizing "at least implicitly, the importance of bona fide transactions and reasonable consideration, setting out affirmative, individualized findings that the parties involved bargained in good faith and that the consideration tendered reasonably reflected fair market value"). The Third Circuit reached a similar conclusion regarding the alleged inconsistency of the current and prior agency definitions and, moreover, found that "requiring 'reasonable consideration' is in keeping with the underlying and long-standing purpose of the Medicare Act, i.e., to reimburse for only actual and reasonable costs." *Albert Einstein*, 566 F.3d at 378; *see also id.* at 377-78. Similarly, the Ninth and Tenth Circuits recognized that the Secretary's interpretation of "bona fide sale" is a reasonable construction of the Medicare regulations. *See Robert F. Kennedy Med. Ctr.*, 526 F.3d at 562 ("As the Secretary noted when promulgating 42 C.F.R. § 413.134(f), 'if a gain or loss is realized from [a] disposition, reimbursement for depreciation must be adjusted so that Medicare pays the *actual cost* the provider incurred.'" (emphasis added by the court)); *Via Christi*, 509 F.3d at 1275-76 ("Even if the Secretary further clarified the definition of 'bona fide sale' in interpretative materials issued after the consolidation in this

11

case . . . St. Joseph was on notice that § 413.134(f) and its 'bona fide sale' requirement would be more than a nullity.").

The analysis of these four circuits is persuasive, and on appeal MHHS has proffered no unconsidered arguments as to why requiring "reasonable consideration" and a close proximity to fair market value is an unreasonable construction of "bona fide sale." *See St. Luke's*, 611 F.3d at 905 ("Fair market value is a hallmark of a bona fide transaction, as the Secretary has long acknowledged."). Moreover, the Secretary's interpretations of 42 C.F.R. § 413.134(f) and (*l*) are not "plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ.*, 512 U.S. at 512; *see also St. Luke's*, 611 F.3d 900; *Albert Einstein*, 566 F.3d 368; *Robert F. Kennedy Med. Ctr.*, 526 F.3d 557; *Via Christi*, 509 F.3d 1259. Accordingly, we hold that statutory mergers must constitute bona fide sales, defined as those consummated for "reasonable consideration" and for which the sales price and fair market value are not in great disparity, in order to be eligible for statutory loss payments under § 413.134(*l*).

B.

We thus turn to MHHS's alternative argument that the merger was, in fact, a bona fide sale. We start in the shadow of the backdrop that the burden of proof to demonstrate that a bona fide sale occurred rests upon MHHS. *See Forsyth Memorial*, 639 F.3d at 539 (citing 42 U.S.C. § 1395g(a); 42 C.F.R. § 413.24(a); *Via Christi*, 509 F.3d at 1277; *Mercy Home Health v. Leavitt*, 436 F.3d 370, 380 (3d Cir. 2006); *Tenet HealthSystems HealthCorp. v. Thompson*, 254 F.3d 238, 245 (D.C. Cir. 2001)).

MHHS did not conduct an appraisal of Hermann's value pre-merger. It is not disputed, however, that the total net book value of the assets acquired was approximately $755.5 million. The Administrator found Memorial assumed only

about $373 million in liabilities in consideration for these assets;[4] and she further found the assets Memorial acquired included (1) total current assets of $141 million, (2) total non-current assets whose "use is limited-investments" of $331 million, and (3) depreciable assets (such as property, plant, and equipment) of $252 million. Because the value of the total current and non-current assets was, itself, well over the $373 million purchase price, the Administrator concluded Hermann sold these assets at a discount and essentially charged nothing for its depreciable assets.

On appeal, MHHS contends the Administrator erred in considering the value of the individual assets Memorial acquired; instead, she should have discounted the value of the assets and considered the value of Hermann as a going concern. The Secretary has made clear, however, that the "cost approach," which is "the only methodology that produces a discrete indication of the value for the individual assets of the business," is "the most appropriate methodology to be used in establishing the fair market value of the assets sold for the purpose of comparison with the sales price in a *bona fide* sale analysis." PM A–00–76, at 3-4. In fact, in this same document the Secretary warned against using an approach to measuring an entity's fair market value that appraises the entity as a going concern for the precise reasons presented in this case—i.e.,

---

[4] MHHS contends this number should be increased by $35 million, based on a loss experienced on bond refinancing. The Administrator rejected this contention, finding this loss was not part of the transaction and should not be utilized to increase the consideration. On appeal, MHHS has not proffered any new evidence or arguments as to why the Administrator was incorrect in this finding. While MHHS argues the merging parties "almost certainly" contemplated costs deriving from bond refinancing, it offers no evidence that the parties specifically viewed these costs as being part of the consideration of the merger, rather than simply a potential expense of running the hospital post-merger. Moreover, there is no evidence in the record as to how much the merging parties anticipated bond refinancing would cost; if such costs were indeed included in the merger's consideration, we would expect to find some projected value; but MHHS points to none. Given the high level of deference we owe to the Administrator, we cannot say this finding was error. *Bd. of Miss. Levee Com'rs*, 674 F.3d at 417.

"produc[ing] an entity valuation that is less than the market value of the current assets." *Id.* at 4. Indeed, PM A–00–76 provides guidance on how to proceed in the exact scenario we have here:

> [I]n analyzing whether a *bona fide* sale has occurred, a review of the allocation of the sales price among the assets sold is appropriate. In some situations, the "sales price" of the assets may be barely in excess of, or less than, the market value of the current assets sold, leaving a minimal, or no, part of the sales price to be allocated to the fixed (including the depreciable) assets. In such a circumstance, effectively the current assets have been sold, and the fixed assets have been given over at minimal or no cost. If a minimal or no portion of the sales price is allocated to the fixed (including the depreciable) assets a *bona fide* sale of those assets has not occurred. In this regard, because consideration was exchanged for the business as a whole, this type of transaction should not be considered a donation of the fixed assets (see the PRM at § 104.16). Rather, this should be viewed as a non-*bona fide* sale of the fixed assets.[5]

PM A–00–76, at 4.

In this appeal, MHHS has not argued that the PM advocates an analysis for discerning whether a bona fide sale has occurred that is either erroneous or plainly inconsistent with the regulation. *See Thomas Jefferson Univ.*, 512 U.S. at 512. And we see no reason to draw such a conclusion. The depreciable gain/loss provisions of Medicare intend to compensate providers for actual economic gains/losses associated with assets themselves—not with gains or losses associated with selling an entity, such as a hospital, as a going concern. *See, e.g.*, 42 U.S.C. § 1395oo(f) (providing that "[t]he reasonable cost of any services shall be the cost actually incurred"); 44 Fed. Reg. 3980, 3980 (Jan. 19, 1979) ("Medicare pays the actual cost the provider incurred in using the asset for patient care.").

---

[5] Moreover, this PM states that "the sales price (assumed liabilities) is allocated first to the cash, cash equivalents, and other current assets," and to the fixed assets last. The Administrator allocated the $373 million assumption of liabilities in precisely this order.

Furthermore, other circuits have applied the bona fide sale requirement in a manner consistent with PM A–00–76. The Tenth Circuit in *Via Christi*, for example, found that, "in the 'bona fide sale' context, the reasonable consideration inquiry involves determining whether the provider received fair market value for its assets." 509 F.3d at 1276. That court then noted PM A–00–76 provides that "the sale price (assumed liabilities) is allocated first to the cash, cash equivalents, and other current assets," and only lastly to depreciable assets. *Id.* at 1277 (quoting PM A–00–76, at 4 (Example 3)). In that case, as here, the value of the current assets consumed the entirety of the purchase price, meaning the depreciable assets were essentially given away without consideration. *Id*; *see also Robert F. Kennedy Med. Ctr.*, 526 F.3d at 560, 563 (noting PM A–00–76 requires "a comparison of the sales price with the fair market value of the assets acquired," and finding that the parties "transferred approximately $50 million in assets for $30.5 million in 'consideration,'" meaning the acquiring party "paid almost nothing for [the consumed party's] hospital buildings and equipment despite their appraised value of approximately $12 million").

The Secretary's position as articulated in PM A–00–76 thus aligns with the provisions and the purpose of the Medicare statute at issue, and has been readily applied by our sister circuits. We see no reason to depart from this reasonable path, and, accordingly, apply the framework established in PM A–00–76 to the case before us. We find substantial evidence supports the Administrator's conclusion that this merger was not a bona fide sale, as the fair market value of Hermann's assets was far below the purchase price. Indeed, the record demonstrates that the value of the current and non-current non-depreciable assets exceeded the purchase price, meaning Memorial paid no

No. 12-20654

consideration for Hermann's depreciable assets for purposes of calculating a loss payment under 42 C.F.R. § 413.134(*l*).[6]  *See* PM A–00–76, at 4.

IV.

Because we have been given no reason to create a split, we join the other circuits in holding that statutory mergers must constitute bona fide sales in order to be eligible for depreciation adjustments under 42 C.F.R. § 413.134(*l*). We further find that substantial evidence supports the Administrator's conclusion that the Hermann-Memorial merger was not a bona fide sale for purposes of the regulations, as the district court recognized.  The judgment of the district court is, therefore,

AFFIRMED.

---

[6] We note briefly that MHHS further argues the Administrator erred in concluding no bona fide sale occurred because the Texas Attorney General and the Harris County Probate Court could not have approved the sale if it were not bona fide.  MHHS argues the probate court necessarily had to find the trust was acting in accordance with its fiduciary duties under Texas law in order to approve the merger, and that Texas law requires a fiduciary to use "care, skill and judgment toward obtaining a fair market value."  Br. of Appellant at 42 (citing *InterFirst Bank of Dallas v. Risser*, 739 S.W.2d 882, 888-89 (Tex. App.1987)).  As the Secretary notes, however, the probate court found, "the Trustees have, in the exercise of their fiduciary duties, undertaken an extensive review of Hermann Hospital and how it can best fulfill the intent and purpose of the Testator and the charitable mission of the Trust in the current health care environment."  A.R. 1260-61.  Accordingly, the probate court focused upon the Testator's desire to run a hospital that assists the indigent, rather than upon maximizing the sale value of its assets.  *See* PM A–00–76, at 3 ("Non-monetary consideration, such as a seller's concession from a buyer that the buyer must continue to provide care for a period of time or to provide care to the indigent, may not be taken into account in evaluating the reasonableness of the overall consideration (even where such elements may be quantified in dollar terms). These factors are more akin to goodwill than to consideration.").  Again, other courts have found this type of focus is at odds with receiving a fair market value.  *See, e.g.*, *Robert F. Kennedy Med. Ctr.*, 526 F.3d at 563.

Finally, MHHS disputes the Administrator's finding that this was not an arm's length negotiation.  Because we have already concluded this merger cannot be a bona fide sale due to the absence of consideration for Hermann's depreciable assets, we do not reach this argument.