# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60221
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
June 21, 2017

Lyle W. Cayce
Clerk

MARK JAVERY; BRIAN DEJAN,

       Petitioners,

v.

CHARLES BOLDEN, JR., Administrator, National Aeronautics and Space
Administration; NATIONAL AERONAUTICS AND SPACE
ADMINISTRATION,

       Respondents.

On Petition for Review from a Determination
of the Administrator, National Aeronautics
and Space Administration
NASA No. O-ST-14-278-HL-S

Before REAVLEY, OWEN, and ELROD, Circuit Judges.

PER CURIAM:*

     Mark Javery and Brian Dejan filed administrative complaints pursuant to the Federal Acquisition Streamlining Act, 10 U.S.C. § 2409, with the National Aeronautics and Space Administration (NASA) after being

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-60221

terminated by Lockheed Martin (Lockheed) and its subcontractor Camgian Microsystems, Inc. (Camgian), respectively.  They alleged that they were unlawfully terminated because they made protected disclosures regarding Lockheed's performance of its contract with NASA.  The NASA Administrator denied their claims.  Javery and Dejan petition this court for review of the Administrator's decision.  We affirm.

**I**

Javery, an employee of Lockheed, and Dejan, an employee of Lockheed's subcontractor Camgian, were terminated from their respective positions working on a Lockheed contract with NASA.  They subsequently filed administrative complaints with the NASA Office of Inspector General (OIG), alleging they were unlawfully terminated because they made disclosures, protected under 10 U.S.C. § 2409, regarding Lockheed's performance of the contract.  Javery and Dejan contended they reported that preventative maintenance funds were being used to perform non-maintenance work, wrongdoing referred to as "mischarging."

OIG investigated the complaints and determined that Javery and Dejan made "disclosures of substantial violations of Federal law or regulation relating to a NASA contract" that were protected from reprisal under § 2409, and that those disclosures were a "contributing factor" in Lockheed's decision to terminate Javery as well as its request that Camgian remove Dejan from the contract's project.  Camgian did remove Dejan and subsequently terminated him.  OIG specifically noted that the 2008 version of § 2409, which Congress amended in 2013, applied to the complaints filed by Javery and Dejan.  Although OIG recognized that the 2008 version does not refer to the type of disclosures OIG maintains Javery and Dejan made, it concluded that "this [omission] was a drafting error" by Congress and the disclosures at issue qualified for protection nonetheless.

2

No. 16-60221

OIG transmitted its report of findings (OIG Report) to the NASA Administrator, whom § 2409 authorizes to make the final determination regarding claims of reprisal.[1]  NASA provided copies of the OIG Report to all parties and requested that Lockheed submit a written response to the OIG Report.  It also invited Javery and Dejan to submit a reply to Lockheed's response.  The parties complied.

In its response, Lockheed "strenuously disagree[d]" with OIG's findings, contending that no protected disclosures were made and that Javery and Dejan were terminated due to poor job performance.  Lockheed challenged a variety of OIG's factual findings and asserted that the 2008 version of § 2409 does not provide protection for the type of alleged disclosures Javery and Dejan made to NASA.  Specifically, Lockheed noted that the 2008 statute does not include "substantial violations of Federal law or regulation relating to a NASA contract" in its language, the type of disclosure the OIG report concluded Javery and Dejan had made.

Javery and Dejan submitted a reply to NASA.  They challenged Lockheed's description of the facts and urged the NASA Administrator to take corrective action on their behalf.  In the section of their reply titled the "law of the case," Javery and Dejan quoted from the 2013 version of § 2409, but failed to challenge Lockheed's assertion that the 2008 statute did not protect their disclosures to NASA.  They also failed to argue that the 2013 version—which potentially protected the type of disclosures allegedly made—applied, rather than the 2008 version previously applied by OIG.

The NASA Administrator concluded that the 2008 statute applied and that the alleged disclosures were not protected under it.  He denied relief.  The Administrator reasoned that the 2008 language was plain and the result it

---

[1] 10 U.S.C. § 2409(c)(1).

required not absurd.  Both the OIG Report and Lockheed had asserted that the 2008 statute governed, and the Administrator noted that Javery and Dejan did not challenge the application of that version of the statute.  Nor did they contest that the alleged disclosures are not protected under the 2008 statute. The Administrator also concluded that the alleged disclosures "concerned potential cost mischarging, as opposed to 'a substantial and specific danger to public health or safety,'" the only category of disclosure in the 2008 version that applied to non-DOD contracts.  The Administrator thus concluded that the findings and conclusions in the OIG Report did not establish "a sufficient basis" for a reprisal claim under § 2409.

## II

Pursuant to § 2409 and the Administrative Procedure Act (APA), we may overturn the Administrator's determination only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[2]  We review the Administrator's legal conclusions de novo,[3] giving deference to his interpretation of the statute as appropriate.[4]  Although courts remain "the final authorities on issues of statutory construction" and "must reject administrative constructions of [a] statute . . . that are inconsistent with the

---

[2] 10 U.S.C. § 2409(c)(5) (requiring that judicial review "shall conform to chapter 7 of title 5," which sets forth the standard for judicial review of agency action under the Administrative Procedure Act); 5 U.S.C. § 706(2)(A) (authorizing a court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").

[3] *Knapp v. U.S. Dep't of Agric.*, 796 F.3d 445, 454 (5th Cir. 2015); *Haliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 258 (5th Cir. 2014) (per curiam).

[4] *Tex. Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010).

No. 16-60221

statutory mandate,"[5] "[i]f the agency interpretation is not in conflict with the plain language of the statute, deference is due."[6]

### III

The Administrator's final determination was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The 2008 statute does not provide protection for the type of disclosures allegedly made by Javery and Dejan, and we cannot conclude that the Administrator's determination, consistent with the plain language of the statute, failed to satisfy the arbitrary and capricious standard.

The Administrator correctly applied the 2008 version of § 2409, rather than the 2013 version. The parties do not appear to dispute that the 2008 version of the statute applies to the instant case. Congress directed that the 2013 amendments to § 2409 apply to contracts awarded 180 days after enactment of the revised language.[7] Alternatively, contracts entered into before the 2013 amendments went into effect could be modified to apply the new provisions.[8] The Lockheed contract was awarded on November 16, 2010,

---

[5] *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32 (1981); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.").

[6] *Nat'l R.R. Passenger Corp. v. Bos. & Me. Corp.*, 503 U.S. 407, 417 (1992); *see also Mem'l Hermann Hosp. v. Sebelius*, 728 F.3d 400, 405 (5th Cir. 2013) ("We review [an] agency's legal determinations *de novo*. But with respect to questions of statutory interpretation, we owe 'substantial deference to an agency's construction of a statute that it administers,' and must give an agency's interpretation 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" (citations omitted) (internal quotation marks omitted) (quoting *Bd. of Miss. Levee Comm'rs v. U.S. EPA*, 674 F.3d 409, 417 (5th Cir. 2012); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)).

[7] National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, § 827(i), 126 Stat. 1632, 1836 ("The amendments made by this section shall take effect on the date that is 180 days after the date of the enactment of this Act . . . .").

[8] *Id.* ("The amendments . . . shall apply to . . . all contracts awarded before [the effective date of the amendments] that are modified to include a contract clause providing for the applicability of such amendments.").

and was not modified to include the 2013 provisions until October 13, 2014, after Javery and Dejan were terminated. Thus, neither the contract date nor the date of modification provides a basis for applying the 2013 provisions.

We next consider the Administrator's interpretation of the 2008 version of the statute. The 2008 statute provides, in pertinent part,

> An employee of a contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to . . . an authorized official of an agency . . . information that the employee reasonably believes is evidence of gross mismanagement of a Department of Defense [(DOD)] contract or grant, a gross waste of [DOD] funds, a substantial and specific danger to public health or safety, or a violation of law related to a [DOD] contract (including the competition for or negotiation of a contract) or grant.[9]

The Administrator concluded that the 2008 version of § 2409(a) "by its terms . . . covers disclosures relating to any of four conditions: 1) gross mismanagement of DOD procurements, 2) gross waste of DOD funds, 3) substantial and specific danger to public health or safety, or 4) a violation of law related to a DOD contract," and that, "[o]f these four conditions, the only one that is not explicitly limited to DOD is the disclosure of a 'substantial and specific danger to public safety.'"

The Administrator acknowledged "the possibility that excluding NASA from the conditions explicitly limited to DOD was a technical mistake" by Congress, particularly because § 2409(b) contemplates that complaints may be submitted to either the DOD or the NASA Inspector General. The Administrator explained, however, that the inclusion of the NASA Inspector General in § 2409(b) is not "inherently inconsistent" with NASA's exclusion from three of the four conditions listed in § 2409(a), because one of the contemplated conditions in § 2409(a)—disclosures relating to health and public

---

[9] 10 U.S.C. § 2409(a) (2010).

safety—does in fact encompass disclosures to NASA, meaning that the reference to the NASA Inspector General in § 2409(b) is not superfluous.

The Administrator rejected the OIG Report's conclusion that the exclusion of NASA from three of the listed conditions was a "drafting error" by Congress, reasoning that "NASA cannot amend the legislation Congress actually passed because it believes Congress made a mistake." He concluded that because the law's language is plain and the required disposition not absurd, it must be enforced and relief denied. The OIG Report's conclusion that Congress made a drafting error rests in part on the substance of the 2013 amendments. When Congress amended § 2409 in 2013, it included *both* DOD and NASA in the three conditions previously limited to DOD.[10]  However, as the Administrator pointed out, the 2013 amendments "changed the substantive nature of disclosures that qualify" and reflected "nuanced policy choices": prior versions of the statute demonstrate that "policymakers were involved in an ongoing evaluation of which agency contracts statutory whistleblower protections for contractor employees should apply . . . as those

---

[10] The 2013 version of § 2409(a)(1) states, in pertinent part:

An employee of a contractor or subcontractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing . . . information that the employee reasonably believes is evidence of the following:
(A) Gross mismanagement of a Department of Defense contract or grant, a gross waste of Department funds, an abuse of authority relating to a Department contract or grant, or a violation of law, rule, or regulation related to a Department contract (including the competition for or negotiation of a contract) or grant.
(B) Gross mismanagement of a National Aeronautics and Space Administration contract or grant, a gross waste of Administration funds, an abuse of authority relating to an Administration contract or grant, or a violation of law, rule, or regulation related to an Administration contract (including the competition for or negotiation of a contract) or grant.
(C) A substantial and specific danger to public health or safety.

protections expanded."[11]  Thus, although "the range of cases potentially falling under the NASA language" in the 2008 version "is attenuated, that does not make the law ambiguous or absurd."

The Administrator's reasoning is sound.  The statute, on its face, extends protection for disclosures to NASA only if such disclosures relate to public safety.[12]  Javery and Dejan do not challenge that the 2008 statute applies to their alleged disclosures.  They do now contend however, that the alleged disclosures relate to a substantial and specific danger to public health or safety such that they are covered under the 2008 statute, a contention contrary to the statements made in their initial complaints to NASA and contrary to OIG's findings.  The Administrator concluded, consistent with the Javery's and Dejan's original statements and with the findings of OIG, that the disclosures concerned potential mischarging in violation of the law.  The Administrator's final determination, which is consistent with the plain language of the applicable statute, was not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

---

[11] For instance, § 2409, when enacted, provided protection to a defense contractor employee for disclosing information "relating to a substantial violation of law related to *a defense contract*."  National Defense Authorization Act for Fiscal Year 1987, Pub. L. No. 99-661, § 942, 100 Stat. 3816 (1986) (emphasis added).  Congress broadened § 2409 in 1994, making it applicable to *any* federal contractor employee, not just defense contractor employees.  Federal Acquisition Streamlining Act of 1994, Pub. L. No. 103-355, § 6005, 108 Stat. 3243.  The 2008 amendments then removed the "substantial violation of law related to a contract" language.  National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 846, 122 Stat. 3 (2008).

[12] *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000))).

No. 16-60221

## IV

Javery and Dejan also contend that the Administrator unreasonably delayed in rendering a final determination on their reprisal claims, in part by authorizing the parties to respond to the OIG Report. We disagree. Although the Administrator did exceed the statutorily required time frame for issuing a final determination regarding a reprisal claim under § 2409,[13] the APA authorizes this court to compel agency action unreasonably delayed, not to dismiss or vacate a determination after it is made.[14] Furthermore, Javery and Dejan have failed to demonstrate that they were prejudiced by any delay, as required under the APA.[15]

\* \* \*

For the foregoing reasons, the Administrator's final determination is AFFIRMED.

---

[13] 10 U.S.C. § 2409(c) (requiring the head of an agency to determine whether there is a sufficient basis for a reprisal claim no later than thirty days after receiving the Inspector General report).

[14] *See United States v. Popovich*, 820 F.2d 134, 138 (5th Cir. 1987).

[15] *King v. Nat'l Transp. Safety Bd.*, 766 F.2d 200, 202 (5th Cir. 1985) (noting that the APA requires "a showing of prejudice before agency action can be set aside for its lack of punctuality" (quoting *Chromcraft Corp. v. EEOC*, 465 F.2d 745, 747 (5th Cir. 1972))).