# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-60061

United States Court of Appeals
Fifth Circuit

**FILED**

November 12, 2014

Lyle W. Cayce
Clerk

AMERISTAR AIRWAYS, INCORPORATED,

Petitioner

v.

ADMINISTRATIVE REVIEW BOARD, UNITED STATES DEPARTMENT
OF LABOR,

Respondent

Petition for Review of the Final Decision and Order of the
United States Department of Labor Administrative Review Board

Before REAVLEY, SMITH, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

This court previously affirmed the Administrative Law Judge's ("ALJ") determination that Ameristar Airways was liable for discharging Thomas Clemmons in violation of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR21"), 49 U.S.C. § 42121. We remanded for the determination of a single issue: whether an e-mail found by Ameristar after Clemmons was fired "was of such severity that [he] would have been terminated on those grounds alone . . . ." *Ameristar Airways, Inc. v. Admin. Rev. Bd.*, 650 F.3d 562, 570 (5th Cir. 2011) (alteration in original) (quoting *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362–63 (1995)). On

No. 14-60061

remand, the ALJ determined that Ameristar failed to meet the high burden of proof required in AIR21 cases. The decision was affirmed by the Administrative Review Board ("ARB"). Ameristar now petitions for our review, arguing that it proved the validity of its defense. The petition is DENIED.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2002, Ameristar Airways hired Thomas Clemmons as its Director of Operations. His duties included hiring and scheduling pilots, maintaining training records, and updating manuals and charts.

Soon after he was hired, pilots complained to Clemmons that several of Ameristar's practices violated Federal Aviation Administration ("FAA") regulations. Clemmons was told that Ameristar pressured pilots to violate FAA duty-time restrictions, which forbid pilots from being on duty longer than 16 consecutive hours in any 24-hour period. *See* 14 C.F.R. § 125.37. On December 17, 2002, Clemmons e-mailed Ameristar President Thomas Wachendorfer, Vice President of Operations Lindon Frazer, and Head of Dispatch Stacy Muth to notify them of his concerns about these complaints.

Clemmons also raised concerns about Ameristar's practice of requiring pilots to confer with company officials before recording any maintenance problems in their logbooks. He believed that requirement also violated FAA regulations.

Later that month, Clemmons complained to Muth that Ameristar was sharing another airline's call signal without FAA approval. Clemmons offered to request a new signal for Ameristar flights, but Frazer instructed him not to do so. Ameristar was later fined $123,000 for this violation.

The following week, Clemmons and his chief pilot met with an FAA official at Ameristar's headquarters and reported their concerns about duty-time and call-signal violations. Management was aware of the meeting.

2

No. 14-60061

Shortly thereafter, Frazer recommended to Wachendorfer that Clemmons be terminated. Wachendorfer agreed. Clemmons was terminated on January 20, 2003.

Throughout the subsequent litigation and unemployment compensation proceedings, Ameristar asserted varying reasons for why Clemmons was terminated. The ALJ determined that Ameristar fired him in violation of 49 U.S.C. § 42121. We affirmed as to liability. *Ameristar Airways*, 650 F.3d at 570-71. At the current point in the litigation, the only issue is whether an e-mail found by Ameristar after he was fired "was of such severity that [he] would have been terminated on those grounds alone," such that back pay should have ended when the e mail was discovered. *Id.* at 570 (alteration in original) (quoting *McKennon*, 513 U.S. at 362–63).

Clemmons was responsible for preparing pilot schedules. Frazer and Wachendorfer instructed Clemmons to prepare a "two weeks on, one week off schedule." Clemmons attempted to prepare those schedules. On January 9, 2003, Wachendorfer sent a memorandum to Clemmons to notify him that the schedule he prepared was unsatisfactory. Clemmons submitted a revised schedule. Wachendorfer again rejected it. Ultimately, Frazer scheduled the pilots for 15 days on and 6 days off.

After this exchange, Clemmons sent an e-mail to Ameristar pilots explaining the revised schedule. That clearly disrespectful e-mail is the after-acquired evidence that concerns us. It read:

> Today I submitted a revised schedule to Mr. Wachmeoffendorfer as per his demand. It was 14 on and 7 off as promised when you were hired. It was (surprise, surprise) not acceptable. He added days to give you 15 on and 6 off so you may have a weekend off. Really you have only 5.5 days off and work 15.5 days. I DID NOT MAKE THIS SCHEDULE AND I AM SORRY! It is effective immediately.

No. 14-60061

I have received a few resignations. If you decide to leave please be very explicit in your letter of resignation. I would expect you to cite your concerns and address each one, ie concerns about safety, pay was not as promised, days off and on are not as promised, having to ask permission before log book write ups, encouragement to violate duty rest time rules, etc…

I will support fully your unemployment claims by sending a letter, on company letter head, supporting your individual claims. I will furnish each of you a copy of your training records and a letter recommendation if needed.

Hopefully I will not be here much longer myself. If I can help you in any way please let me know…while I am still the DO. Again I thank you all for your support. Good Luck to us all!

Tommy

In the e-mail, in which he crudely referred to Wachendorfer as "Mr. Wachmeoffendorfer," Clemmons implicitly encouraged pilots to leave the company. Ameristar did not discover the e-mail until March 28, 2003, two months after Clemmons was terminated.

Following his termination, Clemmons filed a claim for unemployment compensation benefits with the Texas Workforce Commission ("TWC"). Ameristar contested the claim. Ameristar made filings in the case on February 5, March 31, April 4, and June 26, 2003. Even though the March, April, and June filings were all submitted after Ameristar had discovered Clemmons's e-mail, none mentioned the e-mail as one of the reasons for his termination.

The TWC initially granted Clemmons's request for unemployment benefits. Ameristar appealed. At a hearing in June 2003, Ameristar for the first time relied on the e-mail as one of the reasons for termination. Based on that new information, the TWC reversed its award of benefits.

In April 2003, while the TWC proceeding was pending, Clemmons filed a complaint with the Occupational Safety and Health Administration ("OSHA"), alleging that Ameristar terminated him in violation of the whistleblower protections of AIR21. AIR21 protects airline employees who

report violations of federal regulations from discharge or discrimination. *See* 49 U.S.C. § 42121. In his complaint, Clemmons alleged Ameristar violated AIR21 by terminating him after he reported violations of FAA regulations. On May 9, Ameristar submitted a full position statement to OSHA wherein it identified the e-mail as one of the reasons for Clemmons's termination. After conducting an investigation, OSHA found that Ameristar had violated AIR21 and ordered Ameristar to pay back wages.

Ameristar appealed and an ALJ affirmed, finding Ameristar liable for retaliation and awarding Clemmons $56,746.23 in back wages. Ameristar next appealed to the ARB. The ARB vacated and remanded because of legal error. On remand, the ALJ again found Ameristar liable for retaliation and reinstated the damages award. On appeal, the ARB affirmed the ALJ's decision but reduced the back pay award to $37,995.09 to reflect a deduction in temporary income benefits and other earnings.

Ameristar then petitioned for our review. We held that substantial evidence supported the ARB's finding that Ameristar discharged Clemmons in violation of AIR21. *Ameristar Airways*, 650 F.3d at 570. We also ruled, though, that the ALJ erred in failing to consider whether the back pay award should be reduced in light of the after-acquired evidence about the e-mail. *Id.* Ameristar urged that even if it terminated Clemmons for impermissible reasons, it would have fired him for the proper reason of his insubordinate e-mail. We agreed that the argument had to be considered. *Id.* (citing *McKennon*, 513 U.S. at 362). Because the ALJ failed to do so, we remanded for further consideration and to "adjust the back pay award if necessary." *Id.*

On remand, the ALJ concluded that Ameristar had failed to prove by clear and convincing evidence that it would have terminated Clemmons solely on the basis of the e-mail. The ARB affirmed. Ameristar now petitions for our review. Ameristar argues that the ARB erred in holding that it must prove

No. 14-60061

the after-acquired evidence defense by clear and convincing evidence instead of a preponderance of the evidence. Ameristar also contends the ARB erred in concluding that it failed to meet its burden of proving that it would have terminated Clemmons on the basis of the e-mail alone.

## DISCUSSION

This court must uphold an administrative agency's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A). An agency's conclusions of law are reviewed *de novo* and its findings of fact are reviewed for substantial evidence. *Willy v. Admin. Rev. Bd.*, 423 F.3d 483, 490 (5th Cir. 2005). "Under the substantial evidence standard, the ARB's decision must be upheld if, considering all the evidence, a reasonable person could have reached the same conclusion as the ARB." *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Id.* (quotations and citation omitted).

AIR21 provides protections to encourage airline employees to report FAA violations. It also prohibits airlines from penalizing an employee for reporting a violation and permits an award of monetary relief for employees who have been wrongfully discharged or suffered discrimination. *See* 49 U.S.C. § 42121. Even if liability is established, relief may not be ordered if the employer "demonstrates by clear and convincing evidence that [it] would have taken the same unfavorable personnel action in the absence of that behavior." § 42121(b)(2)(B)(iv).

Monetary relief may also be limited through use of after-acquired evidence. In our previous opinion, we noted that "'where there is after-acquired evidence of wrongdoing that would have led to termination on legitimate grounds had the employer known about it,' back pay should be limited to the

period 'from the date of the unlawful discharge to the date the new information was discovered.'" *Ameristar Airways*, 650 F.3d at 570 (quoting *McKennon*, 513 U.S. at 362). Now that the ALJ has applied the *McKennon* standard following the remand, our focus is whether the standard was applied correctly.

*I.  Standard of Proof*

Ameristar argues that the ARB erred in holding that it must prove its after-acquired-evidence defense by clear and convincing evidence. It maintains that AIR21 does not identify the standard of proof for this defense. *McKennon* is silent on the issue. In its remand order, the ARB instructed the ALJ to consider the proper standard, saying that it was "strange that the burden of proof would change in this case where the after-acquired evidence involved an incident occurring before the termination but merely discovered afterwards; that would result in a windfall to the employer solely because it learned of such information later." On remand, the ALJ did not conduct an in-depth analysis of the issue, noting "I see no reason not to accept the [ARB's] determination that Ameristar's burden of proof is clear and convincing evidence; especially in the absence of a showing of Congress's intent to find otherwise."

On appeal from that ruling, the ARB provided a detailed analysis of the standard of proof. The ARB rejected Ameristar's argument that AIR21 is silent on the question. After a complainant shows a prima facie violation, relief may not be ordered under AIR21 if an employer proves "by clear and convincing evidence that [it] would have taken the same unfavorable personnel action in the absence of that behavior." 49 U.S.C. § 42121(b)(2)(B)(iv). According to the ARB, the only purpose of the after-acquired evidence is to limit relief already granted, not to alter a finding of liability. The ARB held that the clear and convincing standard applies to all situations where an employer is seeking to

avoid paying back wages, regardless of whether it is relying on information acquired before or after termination.

Ameristar argues the ALJ and ARB misinterpreted the language of the statute. It contends that Section 42121(b)(2)(B)(iv) only applies when an employer relies on pre-termination evidence to avoid paying back wages. In its view, the ARB improperly interpreted the section as applying to "any issue related to damages." Ameristar suggests that the section ultimately deals with the issue of establishing liability, not damages.

Ameristar relies on a Supreme Court case, *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99 (2003), to support its argument that when Congress has intended to create a heightened-proof requirement, it has been "unequivocal" in so stating. According to Ameristar, Congress has not unequivocally stated that evidence acquired after termination is subject to a heightened-proof requirement in AIR21 cases and, thus, there can be no such requirement. Instead, Ameristar argues, the default preponderance of the evidence standard applies to what must be shown using after-acquired evidence.

The Secretary responds that the ARB correctly held that Section 42121(b)(2)(B)(iv) applies in all situations in which relief is at issue, regardless of whether the issue relates to the relief that may be awarded based on pre-termination evidence or the limitations that may be placed on relief based on after-acquired evidence. The Secretary also suggests that Congress intended to make it difficult for employers to avoid paying damages in "mixed-motive cases" in order to protect whistleblowers. Further, this "plain reading" of the statute avoids a windfall to employers.

The Secretary presents the more well-reasoned argument. AIR21 imposes a heightened burden of proof for employers seeking to avoid providing "relief." As the ARB stated, imposing a heightened burden of proof on employers relying on pre-termination evidence, but not imposing such a

burden on employers relying on after-acquired evidence, would be an anomaly favorable to employers. We hold that the heightened burden applies equally in all instances in which an employer is seeking to avoid providing relief, regardless of whether the employer is relying on pre-termination evidence or after-acquired evidence.

## II. Whether Ameristar Met Its Burden

This court remanded to the ARB to resolve whether Clemmons's e-mail to pilots, discovered by Ameristar two months after Clemmons was terminated, "was of such severity that [he] would have been terminated on those grounds alone . . . ." *Ameristar Airways*, 650 F.3d at 570 (alteration in original; quoting *McKennon*, 513 U.S. at 362–63). Ameristar claims it made this showing.

The ALJ determined that Ameristar failed to provide clear and convincing proof that it would have terminated Clemmons solely on the basis of the e-mail. The ALJ based its decision, in part, on Ameristar's "shifting and contradictory responses" to Clemmons's discharge. The ALJ pointed out that Ameristar had three opportunities to provide the e-mail as one of the reasons for termination in its filings to the TWC and failed to do so. Although Ameristar did mention the e-mail in the May OSHA filing and at the June hearing, these contradictory responses could validly be seen as creating ambiguity, not clarity, as to whether it would have terminated Clemmons on the basis of the e-mail alone. Ameristar did not provide any evidence other than the e-mail itself. Coupled with the discredited testimony of Ameristar's managers, the ALJ determined that, without any additional evidence, Ameristar was unable to meet its burden.

Ameristar maintains that the ALJ's reliance on the TWC filings is unreasonable. It admits that the e-mail was not referenced in the three TWC filings. It urges, however, that this is insignificant. According to Ameristar,

the March TWC filing was filed only three days after the e-mail was discovered and was essentially just a copy of what was previously filed with the TWC on February 5. Moreover, there is no evidence that the HR representative who filed the TWC document was made aware of the e-mail. Ameristar makes the same arguments with regard to the April filing, which was made less than a week later. It contends that failing to mention the e-mail in the June 26 filing is insignificant because the e-mail was already referenced at the June 20 hearing. Finally, Ameristar suggests the TWC filings do not constitute full position statements but rather merely responses to questions. When it did eventually file a full position statement on May 9 in response to the OSHA filing, it expressly mentioned the e-mail as one of the reasons for Clemmons's termination.

Ameristar further argues that the ARB ignored the severely contemptuous nature of the e-mail and failed to acknowledge the "sole inference arising from this e-mail and its context: Ameristar would never have continued to employ Clemmons after learning that he was undermining its president and actively seeking to destroy it."

Ameristar may be correct that many employers would terminate an employee after discovering Clemmons's e-mail. But in this case, the ALJ had completely discredited the testimony of Ameristar's managers, and Ameristar offered no evidence other than the e-mail. Consequently, there is substantial evidence to support the ALJ's determination that Ameristar failed to prove its after-acquired-evidence defense by clear and convincing evidence.

Petition for review DENIED.