# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60012

United States Court of Appeals
Fifth Circuit

**FILED**

January 7, 2016

Lyle W. Cayce
Clerk

CONTINENTAL AIRLINES, INCORPORATED,

      Petitioner

v.

ADMINISTRATIVE REVIEW BOARD, UNITED STATES DEPARTMENT
OF LABOR,

      Respondent

Petitions for Review of the Final Decision and Order of the
United States Department of Labor Administrative Review Board
LABR No. 10-026

Before DAVIS, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:*

Continental Airlines, Inc. ("Continental") challenges an award by the Administrative Review Board ("ARB") for the Department of Labor in favor of a pilot—Roger Luder. The ARB found that Continental retaliated against Luder when it suspended him for logging turbulence on an earlier flight reported to him by a member of the previous flight crew and triggering an

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-60012

inspection which resulted in a delayed flight. Because substantial evidence supports the ARB order, we DENY RELIEF.

I.

Roger Luder was a pilot and captain for Continental Airlines. On September 15, 2007, Continental scheduled Luder to fly an aircraft from Miami to Houston. This flight was the last leg of a three-segment trip for that aircraft. Before Luder boarded the aircraft for his flight, the aircraft had flown from McAllen, Texas to Houston and then from Houston to Miami. When the plane arrived in Miami, Luder's co-pilot, John Wofford, spoke to Mack Solsberry, who was co-pilot on the initial flights from McAllen and Houston.

Solsberry told Wofford that the aircraft encountered significant turbulence between McAllen and Houston. According to Solsberry, the turbulence hit with a force that almost "ripped the wings off," sent a flight attendant to the medical clinic for treatment, and appeared "pink" on the airplane radar.[1] Luder's co-pilot Wofford then relayed this information to him.

After Luder received this report from his co-pilot, Luder determined that the airplane went through "severe" turbulence. He checked the aircraft logbook and found no report of the earlier turbulence as required by Continental protocol. Luder then logged the severe turbulence on the previous flight himself, and placed a call to Continental's Operations Control in Houston to order an inspection. Such an inspection is required by Continental's Flight Operations Manual ("FOM") when an aircraft encounters severe turbulence.

Operations Control returned his phone call and ordered Luder to board passengers on the plane as scheduled. Luder refused. He then received a phone call from several officials within Continental, including Assistant Chief Pilot

---

[1] Pink is the color on an aircraft radar that symbolizes the strongest degree of turbulence.

No. 15-60012

Kip Komidor and Senior Manager of Maintenance Control Jim Sunbury. Komidor argued that no inspection was needed because the turbulence was "moderate" rather than "severe." Sunbury also disputed that the plane needed an inspection telling Luder that the information he received from Solsberry was "hearsay." In response to their confrontation, Luder hung up. When they called Luder again, he threatened to report Continental to the Federal Aviation Administration ("FAA").

Continental then inspected the aircraft, and although it revealed no defects, the inspection delayed take-off by over thirty minutes. Shortly thereafter, Continental held an investigatory meeting and discussed Luder's actions. Following this meeting, Continental notified Luder by letter dated October 19, 2007, that he was suspended without pay for twenty-one flight hours and also subject to a termination level warning for future improper conduct. Continental explained that he received the sanctions for "calling for the inspection" in an "unprofessional" manner without following Continental procedure.

After the suspension ended, Continental conducted a line check ride on Luder. He passed. Nevertheless, Continental ordered Luder to undergo flight simulator training. Because he performed poorly on the first day of training, Continental told him to return for a second day. Luder never returned, and ultimately, was removed from flight status. Luder then began to undergo treatment for his mental health.

Three physicians diagnosed Luder with a myriad of mental health problems ranging from depression to post-traumatic stress disorder. Dr. Vitaliy Shaulov noted that Luder's symptoms did not exist before Continental fought his inspection. Dr. Robert Elliott explained that Luder described Continental's actions as the initiating event for his health issues. And finally, Dr. Sandra Jorgenson reported that Luder lost his "identity and purpose"

No. 15-60012

without the ability to fly. Luder's final treatment for medical problems occurred on September 21, 2011.

Luder filed a complaint with the Secretary of Labor alleging that Continental retaliated against him in violation of 49 U.S.C. § 42121. An ALJ conducted a hearing and entered an award in favor of Luder, and holding Continental liable for unlawful retaliation when it suspended and issued a warning letter to Luder. On review, the ARB affirmed the ALJ decision on liability but remanded for further findings on the issue of damages. The ALJ on remand found that Continental caused Luder's mental health decline and granted front-pay until he reached the mandatory retirement age. Upon reviewing the damages award, the ARB agreed that Continental caused Luder's loss but limited his front-pay award to the date of his last medical treatment. Continental then lodged this petition.

## II.

We review de novo the conclusions of law by an administrative agency.[2] A finding of fact by the administrative agency is reviewed for substantial evidence.[3] This standard is highly deferential, and requires only "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion."[4] Stated simply, substantial evidence exists if a reasonable person could have reached the same conclusion as the administrative review board.[5]

## III.

The Wendell H. Ford Investment and Reform Act for the 21st Century or "AIR-21", 49 U.S.C. § 42121, was enacted to encourage airline employees to report FAA violations.[6] To this end, AIR-21 prohibits airlines from penalizing

---

[2] *Ameristar Airways, Inc. v. Admin. Review Bd.*, 771 F.3d 268, 272 (5th Cir. 2014).

[3] *Id.*

[4] *Mem'l Hermann Hosp. v. Sebelius*, 728 F.3d 400, 405 (5th Cir. 2013).

[5] *See Ameristar*, 771 F.3d at 272.

[6] *Id.* (citing 49 U.S.C. § 42121).

an employee who reports a violation.[7] In particular, liability against an airline requires an employee to establish four elements: the employee engaged in protected conduct, the employer knew of the protected conduct, he suffered an adverse employment act, and the protected conduct contributed to the adverse employment act.[8] If the employee establishes his prima facie case, the airline may argue as an affirmative defense that it would have taken the same action regardless of the protected conduct.[9]

To establish protected conduct, the employee must show that he reported a violation of federal safety law.[10] Specifically, activity is protected "because the employee provided…information *relating* to *any* violation or alleged violation of any order, regulation, or standard of the [FAA]."[11] Moreover, the employee's belief that a violation of federal law occurred must be reasonable.[12] Continental argues that Luder provided information unrelated to a federal safety law, but even if it did concern a legal violation, his belief was unreasonable.

Substantial evidence supports the ARB finding that Luder reported an alleged violation of federal law. Under 14 C.F.R. § 91.9, which is a federal regulation governing safety and other aspects of the airline industry, pilots must comply with the flight operations manual (FOM) of his airline.[13] In its

---

[7] *Id.*

[8] 49 U.S.C. § 42121(a).

[9] 49 U.S.C. § 42121(b)(2)(B)(ii).

[10] 49 U.S.C. § 42121(a).

[11] 49 U.S.C. § 42121(a)(1) (emphasis added).

[12] *In re* Van, 2013 WL 499363, at *4 (Dep't of Labor Jan. 31, 2013) (noting that an employee must "subjectively believe[] that his employer was engaged in unlawful practices and his belief must be objectively reasonable in light of the facts and record presented.").

[13] In particular, 14 C.F.R. § 91.9 creates the standard of care for a pilot by incorporating the airline's FOM. And, if a pilot fails to comply with the FOM, he could face punishment. *See, e.g.*, *Jensen v. Adm'r, FAA*, No. 93-5135, 1994 U.S. App. LEXIS 41974, at *1 (5th Cir. 1994) (affirming the revocation of a pilot's license by the FAA for below-standard conduct).

operations manual, Continental required that pilots log all encounters with severe turbulence during a flight. After a pilot logs such turbulence, the operations manual then requires him to order an inspection of the aircraft.

Because he believed that the airplane went through severe turbulence, Luder's actions implicated federal regulations in two ways.[14] First, by logging the turbulence, he effectively reported a violation by the previous pilot for failing to log his encounter with severe turbulence. Second, by challenging Continental's refusal to conduct the inspection and refusing to acquiesce in Continental's objection to an inspection he reasonably believed was required by the FOM, Luder reported that Continental tried to cause him to violate FAA regulations by not complying with the FOM.

Moreover, substantial evidence supports the ARB finding that Luder's belief that the airplane encountered severe turbulence was reasonable. Solsberry, who was on the first flight, described winds so strong they nearly tore the wings off, sent a person to the medical clinic, and appeared on the radar as pink—the greatest degree of turbulence.

Continental's argument that Luder failed to prove the remaining elements of his prima facie case is meritless. Substantial evidence supports the ARB decision that Luder proved these three elements. First, the ARB was entitled to find Continental knew that Luder logged the severe turbulence and requested an inspection. Particularly, the logbook entry and triggered inspection by Luder was the subject of the heated telephone conversation between him and Continental officials.

The ARB also correctly determined that Continental's action against Luder was an adverse employment action. An adverse employment action is

---

[14] *See In re* Svendsen, 2004 DOL Ad. Rev. Bd. LEXIS 201, at *138 (Dep't of Labor Aug. 26, 2004) (noting that conduct need only "touch on" subject matter of the regulation).

one that would dissuade a reasonable worker from engaging in the protected conduct.[15] Suspension without pay is a way to dissuade employees from engaging in protected conduct, and thus, Continental's suspension of Luder for two weeks without pay was an adverse employment action.[16]

Substantial evidence also supports the ARB holding that Luder's protected conduct contributed to the adverse employment action. A factor that affects the outcome of a decision in any way contributes to the adverse decision.[17] The ARB did not err in concluding that Luder's logbook entry affected Continental's decision to suspend him. In its letter advising Luder of his sanctions, Continental acknowledged that he "requested an aircraft inspection" and that it punished him for "calling for the inspection," and as such, his "actions were unprofessional."[18]

Instead of suspending Luder for making the logbook entry, Continental argues that it suspended Luder because "his behavior on the telephone" was unprofessional and he failed to follow "appropriate and reasonable procedures." However, the ALJ finding that the alternative reasons presented by Continental were pretextual is supported by substantial evidence.

Luder had the authority to decide that the plane was unsafe to operate under 14 C.F.R. § 91.3, which provides that "[t]he pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft." Thus the ALJ was entitled to find that the real reason for Luder's suspension was not his impolite action in connection with his heated telephone conversation with Komidor, but instead, it was his refusal to agree

---

[15] *Allen v. Admin. Review Bd.*, 514 F.3d 468,476 n.2 (5th Cir. 2008).

[16] *Cf. LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007); *Hypolite v. City of Houston*, 493 F. App'x 597, 606 (5th Cir. 2012).

[17] *Ameristar Airways Inc. v. Admin. Review Bd.*, 650 F.3d 562, 567 (5th Cir. 2011).

[18] "You failed to use good judgment in the performance of your duties by not following appropriate and reasonable procedures in calling for the inspection."

with them that an inspection was not required under Continental's FOM. Similarly, Luder followed Continental procedures; despite its contrary argument, Luder consulted with numerous individuals about his concern for the safety of the aircraft, including Operations Control—twice—and three different Continental officials.[19]

Continental argues finally that the ALJ and ARB erred in refusing to accept its affirmative defense. An airline may avoid liability if it proves that it would have made the same adverse decision regardless of the protected conduct.[20] Although Continental argues that Luder's impolite conversation and failure to follow procedures justified his suspension, the ALJ was entitled to find that the real cause for the suspension was Luder's request for an inspection of the aircraft and delaying the flight. The ALJ and ARB therefore were entitled to reject Continental's affirmative defense.

Continental also challenges the award given to Luder. The remedy provided by AIR-21 is meant to make an employee whole, and generally, the award is to reinstate an employee to his former position.[21] But front-pay is available when reinstatement is not possible.[22] Continental argues primarily that Luder did not continue to suffer a loss after his suspension ended, because he passed a line check ride indicating that he did not suffer from any mental illness.

Nevertheless, the findings of the ARB that Luder is entitled to an award of front-pay until September 21, 2011 are supported by substantial evidence.

---

[19] Continental also appealed whether the ALJ had authority to reopen the record on remand from the ARB. This argument is without merit. In its remand order, the ARB gave the ALJ the discretion to "determine the fairest and most expeditious way to proceed consistent with this opinion."

[20] 49 U.S.C. § 42121(b)(2)(B)(ii).

[21] *See* 49 U.S.C. § 42121(b)(3)(B).

[22] *In re* Berkman, 2000 WL 260585, at *22 (Dep't of Labor Feb. 29, 2000).

No. 15-60012

The medical evidence was insufficient to show that a pilot could not pass a line check flight while suffering from a mental illness. Moreover, Luder introduced substantial medical evidence to establish that he suffered a precipitous decline in mental health after Continental's actions and that his loss persisted until September 21, 2011, when Luder received his final medical treatment. Because this was the last date of his treatment, the ARB was entitled to find that Luder no longer suffered a loss attributable to Continental's actions after that date.[23]

## IV.

For the foregoing reasons, we DENY RELIEF the Administrative Review Board order.

---

[23] Luder argued that he continues to suffer from tachycardia, which is a heart condition that may be attributable to a mental health condition. However, Luder failed to file a cross petition and seek to modify the ARB judgment by increasing the damages. Accordingly, Luder is prevented from now raising this argument in his reply brief. *See* 42 U.S.C. § 42121 (b) (4) ("[a]ny person adversely affected or aggrieved by an order…[can] obtain review of the order in the United States Court of Appeals…[but] [t]he petition for review must be filed."); *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999) ("[a]bsent a cross-appeal, an appellee…may not 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.'").